CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

July 03, 2024

LAURA A. AUSTIN, CLERK
BY: /s/T. Taylor
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| MICHAEL ANTHONY CARPENTER, SR. ) | |
| Petitioner, ) | Civil Action No. 7:22cv00480 |
| ) | |
| v. ) | MEMORANDUM OPINION |
| ) | |
| HAROLD W. CLARKE, DIRECTOR, ) | By: Robert S. Ballou |
| Respondent. ) | United States District Judge |

Michael Anthony Carpenter, Sr., a Virginia inmate acting by counsel, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his 2017 convictions in Patrick County Circuit Court. The Respondent has filed a Motion to Dismiss, to which petitioner has responded. For the reasons stated below, I find that Carpenter has failed to show that the state court's habeas decision was based on an unreasonable determination of fact or law, and I grant the Motion to Dismiss.

## I. Background

A grand jury for Patrick County Circuit Court indicted Carpenter for two counts of aggravated sexual battery and three counts of forcible sodomy on his daughter when she was between the ages of 6 and 10 years old. He was also indicted for possession of child pornography. His case was tried before a jury on February 17, 2017. At the conclusion of the prosecutor's evidence, the court granted a motion to strike the pornography charge and took the motion under advisement for one of the oral sodomy charges. The jury deliberated for three hours before returning their verdict, acquitting Carpenter of one oral sodomy charge but convicting him of another oral sodomy charge, anal sodomy, and both counts of aggravated sexual battery. The trial court then adjourned for the night, as it was after midnight.

Although the parties anticipated returning on Saturday, February 18, for the sentencing phase, Carter was hospitalized that morning following an overdose of clonazepam and Tylenol. The trial ultimately resumed on Wednesday, February 22, 2017, in the afternoon. Before bringing the jury in, defense counsel argued multiple grounds for a mistrial, which the court overruled. However, the court did strike the second oral sodomy charge, leaving three charges for the jury to consider at sentencing. Trial Tr. at 532. The jury recommended eight years on the anal sodomy charge and four years each on the aggravated sexual battery charges, for a total of 16 years, and a total fine of $16,000. *Id.* at 585–86. The court ordered a presentence report.

Subsequently, defense counsel filed several motions for a new trial, raising several issues. The trial court heard argument and denied these motions on November 8, 2017, immediately before hearing testimony for the sentencing hearing. The court imposed the sentence recommended by the jury with the following modifications: (1) Pursuant to Virginia Code § 18.2-67.1(B)(2), because the victim was under age 13 and the defendant more than three years older, the court added a 40-year suspended sentence to the active sentence for sodomy, conditioned on good behavior for life, following five years of supervised probation; (2) the court imposed an additional year, suspended, on each aggravated sexual battery conviction, to run consecutively, conditioned on successful completion of one year of post-release supervision on each, to run consecutively with each other but concurrently with the five years of probation; and (3) the court suspended all but $2,000 of the fine. Following a clarification hearing on December 20, the court entered its final order on December 29, 2017.

The defense, with new counsel, filed a motion to set aside the verdict, which was argued January 16, 2018. Among the grounds argued were counsel's failure to introduce the victim's medical records and counseling records, failure to cross-examine the victim about her online

2

jokes about pedophilia, and failure to request a mistrial after the court struck the child pornography charge. The court denied the motion.

Carpenter timely appealed his conviction. While the appeal was pending, on April 16, 2018, counsel filed a motion to vacate or set aside the verdict in the Circuit Court on the grounds of juror misconduct. The motion was based upon information from Juror Hubbard to the trial judge that another juror had said, at the very beginning of deliberations, "the same thing happened to me and we need to convict this guy." R-2[1] at 13. Hubbard further reported that this juror had been overbearing, deterring full and fair discussion of the evidence in the case. The judge apparently passed that information to both counsel. Jurors Hubbard, White, and Nooncaster were subpoenaed for a hearing, but the hearing never happened. On September 7, 2018, the trial court denied the motion, noting that the trial court had no jurisdiction while the matter was in the Court of Appeals.

The Court of Appeals denied the appeal by order entered August 29, 2018. The court denied his petition for rehearing on December 28, 2018. The Supreme Court of Virginia refused his appeal on July 3, 2019. He did not petition the United States Supreme Court for certiorari. On February 4, 2020, Carpenter filed a state habeas corpus petition in the Patrick County Circuit Court, raising the same issues asserted in the current 2254 petition. The Circuit Court dismissed the habeas petition on July 1, 2021, and the Virginia Supreme Court refused his appeal on March 7, 2022. Carpenter then timely filed his 2254 petition in this court, raising the following issues, the same ones raised in state court:

---

[1] References to R-2 are to the second file in *Commonwealth v. Carpenter*, No. CR16-36 (Patrick Co. Cir. Ct.).

1. Ineffective assistance of counsel in failing to elicit a juror's prior sexual assault victimization during *voir dire* and violation of due process in seating a biased juror who was intentionally deceptive during *voir dire*.

2. Ineffective assistance of counsel in failing to object to Jury Instruction 10, which stated: "The testimony of [victim] alone is sufficient to sustain a conviction of forcible sodomy if it is determined credible. Corroboration of her testimony is not essential." Carpenter alleges that the instruction misstated the law and was misleading and prejudicial.

3. Ineffective assistance of counsel in failing to cross-examine the victim about her prior attention-seeking behavior and her jokes about pedophilia.

4. Ineffective assistance of counsel in failing to move for a mistrial when the charge of possession of child pornography was struck at the close of the Commonwealth's case.

5. Aggregate prejudice from the cumulative effect of counsel's errors.

## II. Discussion

**A. Standard of Review**

A federal court may grant a petitioner habeas relief from a state court judgment "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Federal courts reviewing constitutional claims adjudicated on the merits in state court may grant relief on such a claim only if the state court's decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2).

A decision is contrary to federal law only if it reaches a legal conclusion that is directly opposite from a Supreme Court decision or if it reaches the opposite result from the Supreme Court on facts that are materially indistinguishable from the Supreme Court case's facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). A state's decision is an "unreasonable application" of federal law only if the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). The question is not whether a federal court believes that state court's decision is incorrect, but whether the decision was unreasonable, which is "a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). Likewise, the federal court must presume that the state court's factual findings are correct, and this presumption can be overcome only "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Again, the federal court must find more than just an incorrect determination of facts, as "unreasonable determination of the facts" is a "substantially higher threshold." *Schriro*, 550 U.S. at 473.

When reviewing counsel's performance in claims of ineffective assistance, courts also apply a highly deferential standard. A petitioner must show that (1) counsel's performance was so deficient that she was not functioning as counsel guaranteed by the Sixth Amendment *and* (2) that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Petitioner must meet both prongs of the test. Deficient performance requires a showing that counsel's performance fell below "an objective standard of reasonableness . . . under prevailing professional norms." *Id.* at 688. The reviewing court may not rely upon "the distorting effects of hindsight," but must presume that counsel made all significant decisions in the exercise of reasonable judgment and that those decisions fell within the range of reasonable

strategy decisions. *Id.* at 689–90. To establish prejudice under *Strickland*, a petitioner must show that there was a "reasonable probability that the outcome of the proceedings would have been different," which means "a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

A federal court reviewing a state court's assessment of an ineffective assistance of counsel claim must be "doubly deferential," because the deferential standard of review under the statute overlaps with the deferential standard under *Strickland*. *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011). In other words, the federal court is to afford "both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 571 U.S. 12, 15 (2013). "If this standard is difficult to meet, that is because it was meant to be." *Harrington*, 562 U.S. at 103.

**B. Analysis**

The only state opinion addressing Carpenter's claims on the merits is the Circuit Court habeas opinion, which references the reasons stated on the record at the habeas motions hearing. This court "looks through" the Supreme Court of Virginia's refusal of the appeal and reviews the reasoning of the Circuit Court. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) (holding that federal habeas court must presume that "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground."). The deferential standard of review prescribed by § 2254(d) will apply to the Circuit Court's habeas decision as I analyze Carpenter's claims.

**1. Juror White**

Carpenter raises two issues regarding Juror White. First, he alleges that counsel failed to adequately *voir dire* the panel to determine whether any potential jurors had been sexually abused. Second, he alleges a due process violation caused by seating a biased juror who

deliberately concealed her bias. The first issue involves ineffective assistance of counsel, but the second does not.

      a. *Voir dire*

Defense counsel did not specifically ask if any panel member had been sexually abused. The state habeas court found neither deficient performance nor prejudice after considering the record of the total *voir dire*. The factual findings and legal conclusions upon which the habeas court based its decision are reasonable.

The record shows that the trial court asked the jurors at the outset if they knew of any reason they could not be fair and impartial. Habeas Tr. at 146. Next, the Commonwealth Attorney asked, "Has anybody ever had a traumatic event happen to you?" *Id.* at 157. She followed that by asking if anyone had trouble believing that sexual abuse occurs against children. *Id.* at 158. At that point, one panelist stated that she was angry and wished to speak privately with the attorneys and judge. In chambers, she stated that she had been sexually molested herself and was not sure how that would affect her ability to be a juror. She was excused for cause. *Id.* at 160. Later, defense counsel asked if any jurors had any experience with investigations or criminal law; Ms. Flint indicated that she studied criminal justice in school and was interested in investigations. She also disclosed that she had been the victim of a sexual crime as a young child. Although offered the opportunity to discuss the matter privately, she stated she was comfortable answering questions in open court, and she ultimately admitted that she was not sure she could remain fair throughout the trial. *Id.* at 169. The court excused her for cause. *Id.* at 171. Defense counsel also asked whether the nature of the charges caused the prospective jurors any bias; finally, he asked if any of them worked or volunteered for a child advocacy organization. *Id.* at 175-178.

*Voir dire* has two purposes, enabling the court to select an impartial jury and assisting counsel in exercising peremptory challenges. *Mu'Min v. Virginia*, 500 U.S. 415, 431–32 (1991). A party has no right, statutory or otherwise, to ask any question he wishes. *Skipper v. Commonwealth*, 477 S.E.2d 754, 757 (Va. Ct. App. 1996). Under Virginia law, counsel for any party shall have the right to question a prospective juror about: (1) Whether that juror is related to either party; (2) whether that juror has any interest in the cause; (3) whether that juror has expressed or formed any opinion; and (4) whether that juror is sensible of any bias or prejudice. Va. Code § 8.01-358. It was not unreasonable for the habeas court to find that the whole *voir dire* in context had adequately inquired about bias against someone charged with a sex offense against a child and therefore counsel's performance was not deficient.

The court's decision on performance is also supportable on another ground: Counsel's choice of questions on *voir dire* is a matter of strategy. *Bennet v. Stirling*, 170 F. Supp. 3d 851, 873 (D. S.C. 2016). On habeas review, "federal courts generally accord particular deference to the judgment of trial counsel during *voir dire*." *Gardner v. Ozmint*, 511 F.3d 420, 426 (4th Cir. 2007) (internal quotation and citation omitted). Reasons counsel might choose not to question directly about sexual victimization is that the issue is highly personal and counsel would risk embarrassing or offending potential jurors. *See Bennett*, 170 F. Supp. 3d at 873 (defense counsel testified that asking about racial bias risked offending potential jurors).

Nor was that state court unreasonable in finding that Carpenter was not prejudiced by counsel's failure to ask directly whether panel members had been victims of sexual abuse. By Carpenter's own allegations, the juror was intentionally deceptive during *voir dire*. That allegation undercuts any suggestion that she would have answered the question in such a way as to be struck from the jury. It is speculative to guess how she would have answered the question

8

and even more speculative to say that there is a possibility, much less a reasonable probability, that the outcome of the trial would have been different.

    b. Due Process Violation

The state habeas court gave Carpenter and his counsel an additional 30 days to obtain admissible (non-hearsay) affidavits to support his claim of juror misconduct. Carpenter never presented such evidence or affidavit to support the claim, and therefore the state habeas court dismissed it.

To establish a viable claim for juror dishonesty during *voir dire*, a defendant must first show that a juror failed to honestly answer a material question and then show that an honest answer would have provided a valid basis for a challenge for cause. *Gardner*, 511 F.3d at 424. Because she was not asked if she had been sexually abused as a child, her failure to disclose that information can be considered dishonest only if the answer was responsive to a different question and she intentionally failed to provide the information. Unless she admitted that she knew "have you had a traumatic event happen to you?" included sexual abuse, intentional dishonesty would be a difficult inference to make. Likewise, she may have believed that she could be fair and impartial, notwithstanding her experience, when she was asked that question. Therefore, the state habeas court reasonably dismissed the claim when Carpenter could not produce more direct evidence of intentional dishonesty.

    **2. Failure to Object to Jury Instruction**

Carpenter alleges that counsel was ineffective in failing to object to Jury Instruction 10, which stated:

> [T]he testimony of [victim's name] alone is sufficient to sustain a conviction of forcible sodomy, if it is determined credible. Corroboration of her testimony is not essential.

9

Trial Tr. at 460-461. He maintains that counsel should have objected to the instruction as an incorrect statement of the law, misleading, confusing, and improperly emphasizing the victim's testimony over all other evidence.

While the instruction, described by the state habeas court as "not artful," may well have been objectionable for a variety of reasons, it was not an incorrect statement of the law. *See Nobrega v. Commonwealth*, 628 S.E.2d 922, 927 (Va. 2006) (holding that "the victim's testimony alone, if not inherently incredible, is sufficient to support a conviction for rape."); *Fisher v. Commonwealth*, 321 S.E.2d 202, 203 (1984) ("It is clear that the victim's testimony, if credible and accepted by the finder of fact, is sufficient, standing alone, to support the conviction.").

Failing to object to a jury instruction that plainly misstates the law would constitute deficient performance if counsel were ignorant of the law. As the Fourth Circuit noted in finding counsel's performance deficient under those circumstances, "An attorney's ignorance of a point of law that is fundamental to his case combined with his failure to perform basic research on that point is a quintessential example of unreasonable performance under *Strickland*." *Wright v. Clarke*, 860 F. App'x 271, 277–78 (4th Cir. 2021) (unpublished) (citation omitted). While there can be no strategic decision if counsel has not made a reasonable investigation of the facts and law, where counsel recognizes a correct statement of law and chooses for strategic reasons not to object to an unartfully worded instruction, reviewing courts owe high deference to that strategic decision. And this court owes deference to the state court's determination that counsel's performance was reasonable.

Further, the state habeas court reasonably noted that the jurors had the other usual instructions, including credibility of witnesses, burden of proof, and guilt beyond a reasonable

10

doubt. Based on these observations, it is reasonable to find that Carpenter has failed to show a reasonable probability of a different outcome had Carpenter objected to the instruction.

### 3. Failure to Question the Victim about her Jokes

The victim had tweeted jokes on social media about pedophiles, "daddy issues," and attention-seeking behavior.[2] Carpenter alleges that defense counsel was ineffective for failing to question her about these posts to impeach her credibility. Generally, deciding what questions to ask or refrain from asking are matters of trial strategy, for which great deference is given to the defense attorney. *Elmore v. Sinclair*, 781 F.3d 1160, 1171 (9th Cir. 2015). The question is whether counsel's strategy decision is reasonable in light of professional norms. *Strickland*, 466 U.S. at 688.

In his affidavit, trial counsel stated that he did not choose to use those statements in cross examination because he thought they "would have been perceived as 'gallows' or dark humor by a 'victim.' . . . . and this statement could have underscored the psychological harm associated with being the victim of a crime." Padgett Aff't at 5, Resp't's. Ex. 8, ECF No. 10-8. The state habeas court found that counsel's strategy was reasonable, noting that counsel must "walk a very fine line" when cross-examining a witness in a sexual assault case.

The trial court also summarized many significant points that counsel developed on cross. Habeas Tr. at 92-93. These points included how long she waited before first coming forward with allegations when she was 17 years old, the lack of physical injury, prior inconsistencies regarding her age at the time of events, her drama studies before she came forward with the allegations, her continued visitation with her father until the time of his arrest, her prior denials of having been sexually abused by anyone, and her possible motive for fabricating the charges,

---

[2] For example, she tweeted "What is the worst thing about being a pedophile? Just trying to fit in." Padgett Aff't at 5, Resp't's Ex. 8, ECF No. 10-8.

finding out less than one week before her allegations that she had a half-brother her same age that Carpenter had placed for adoption. Because the victim had been impeached on several fronts, the state habeas court found that asking questions about these tweets would not have been reasonably likely to change the outcome. *Id.* at 93.

The state court's factual findings are amply supported by the record, and the legal conclusions are reasonable. When additional impeachment would be merely cumulative, there can be no prejudice from failing to ask additional questions. *Hunt v. Nuth*, 57 F.3d 1327, 1333 (4th Cir. 1995). As the court noted in *Hunt*, the criticisms of counsel's cross-examination of the victim merely constitute "grading of the quality" of the cross-examination. *Id. Strickland* requires that counsel's performance be judged by a reasonableness standard; a defendant is entitled to adequate representation, not the best possible representation at trial. *Id.*

### 4. Failure to Request a Mistrial

One of the charges Carpenter faced at the beginning of his trial was for possession of child pornography. The only evidence offered in support of the charge was the following testimony of the victim:

> I remember one time in particular, when we were on the couch in the living room and he had showed me some pictures on his computer of a young girl, she was around my age, she looked to be around my age, like sitting provocatively with . . . without clothes on and, you know, he asked me like, "She's not afraid. Why are you afraid? She is comfortable enough to do this. Why aren't you comfortable enough?

Trial Tr. at 234. Later, the victim testified that the pictures were on a laptop computer. *Id.* at 255. She said she saw more than one picture of the girl, but she could not remember how many. The girl was lying on a blanket and did not have clothes on. No one else was in the picture, and the girl was not doing anything sexual, just posing nude. The victim admitted she was not sure

of the child's age and that some 18-year-olds look much younger. *Id.* at 258-259. Significantly, the Commonwealth did not introduce any pictures into evidence.

At the close of the Commonwealth's evidence, defense counsel moved to strike the charge. The court said "a little girl about my age. I mean, that's . . . that's not really great is it." *Id.* at 322. The court added "I don't even think it's prime facia (sic) on that one." *Id.* The court granted the motion to strike the child pornography charge, noting he was not convinced there was a child in the photograph. *Id.* at 324-326, 328. However, he noted that the prosecution was free to talk about the pictures that were used during closing statement as evidence relevant to the remaining charges. *Id.* at 325.

Habeas counsel argued that defense counsel should have moved for a mistrial when the child pornography charge was struck, saying "you can't then unring the bell with the jury" once they had already heard the evidence. Habeas Tr. at 95. In his affidavit, trial counsel stated that he considered the child pornography case very weak and believed even before trial that it would be struck. Because he believed that child sex abuse and child pornography were of comparable severity to a layperson, he believed that seeing the child pornography dismissed before they got to consider the case would lead the jury to question the validity of the sexual charges as well. Padgett Aff't at 7. The state habeas court found neither deficient performance nor prejudice, noting that there is no guarantee that the motion for mistrial would have been granted and that the jury had not convicted on all counts, suggesting that they had not been unduly influenced by the evidence. The state court also found counsel's strategic reason for going forward without a mistrial motion was reasonable.

Again, the record supports the state court's factual findings. Further, a mistrial would not exclude the evidence about Carpenter showing her the pictures to coax the victim into

13

cooperating, so a mistrial would not "unring" that bell. The trial court had already told the prosecutor she could talk about the evidence in her closing statement as it related to the other charges. Trial Tr. at 325. Therefore, it is unlikely that the trial court would have granted the mistrial. Carpenter has not shown that a reasonable attorney would have believed a mistrial motion had a realistic chance of being granted under these circumstances, and counsel is not required to file futile motions for his performance to be reasonable. *Moody v. Polk*, 408 F.3d 141, 151 (4th Cir. 2005). Since the mistrial would not have been granted and the evidence would not have been excluded, there can be no prejudice from counsel's failure to make a mistrial motion.

### 5. Aggregate Prejudice

Carpenter argues that the cumulative prejudice from the claims above denied him a fair trial. For constitutionally ineffective assistance of counsel, however, there must be deficient performance as well as error. Because the state court reasonably found that trial counsel's performance was not deficient in any respect, there is no prejudice to aggregate. At any rate, the Fourth Circuit Court of Appeals has explicitly rejected cumulative error analysis; each claim for ineffective assistance of counsel must be reviewed individually, not collectively. *Fisher v. Angelone*, 162 F.3d 835, 852 (4th Cir. 1998).

### III. CONCLUSION

Under the doubly deferential standard of review required on federal review of state court habeas decisions, Carpenter has failed to establish that the state court was unreasonable in finding neither deficient performance nor prejudice. I will therefore grant the Respondent's Motion to Dismiss.

I decline to issue a certificate of appealability, because Carpenter has not made a substantial showing of the denial of a constitutional right and reasonable jurists would not find the court's procedural rulings to be debatable or wrong.

A separate Final Order will be entered this date.

Enter: July 3, 2024

/s/ Robert S. Ballou

Robert S. Ballou
United States District Judge